1  Squire Patton Boggs (US) LLP
2  Matthew F. Miller (State Bar # 172661)
   matthew.miller@squirepb.com
   Nisha S. Patel (State Bar # 268234)
3  nisha.patel@squirepb.com
   275 Battery Street, Suite 2600
4  San Francisco, California  94111
   Telephone:     +1 415 954 0200
5  Facsimile:     +1 415 393 9887

6  Attorneys for Plaintiff
   COMET TECHNOLOGIES USA INC.
7

8                 UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11 COMET TECHNOLOGIES USA INC. a          Case No. 5:18-cv-01441 LHK
   Delaware Corporation,
12                                         **PLAINTIFF COMET
                Plaintiff,                 TECHNOLOGIES, USA INC.'S
13                                         RENEWED *EX PARTE* APPLICATION
           v.                              FOR TEMPORARY RESTRAINING
14                                         ORDER, ORDER TO SHOW CAUSE
   DOUGLAS BEUERMAN, an individual, and    WHY PRELIMINARY INJUNCTION
15 DOES 1-10,,                             SHOULD NOT ISSUE AND ORDER
                                           PERMITTING EXPEDITED
16              Defendants.                DISCOVERY; MEMORANDUM OF
                                           POINTS AND AUTHORITIES IN
17                                         SUPPORT THEREOF**

18                                         Date:     TBD
                                           Time:     TBD
19                                         Crtm:     8
                                           Judge:    Judge Lucy Koh
20

21      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

22      **PLEASE TAKE NOTICE** that on a date and time to be determined by the Honorable

23 Lucy Koh in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, 4th Floor

24 San Jose, CA 95113, Plaintiff Comet Technologies USA Inc. ("Comet" or "Plaintiff") will, and

25 hereby does, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65-1,

26 apply *ex parte* for: (1) a temporary restraining order against Defendant Douglas Beuerman

27 ("Beuerman" or "Defendant"); (2) an order to show cause why a preliminary injunction should

28 not issue; and (3) for an order permitting expedited discovery ("*ex parte* Application").

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

Comet hereby renews its *ex parte* Application to prevent its ex-employee Beuerman from exploiting its most valuable research and development trade secrets at a key competitor, XP Power LLC ("XP Power"). Just days after receiving an offer of employment from XP Power, and immediately prior to giving notice of his resignation to Comet, Beuerman accessed and downloaded to a private external memory drive abundant trade secret and confidential information associated with Comet's newest intellectual property. Comet expended many millions of dollars and thousands of hours developing the stolen intellectual property. It is not available to competitors or others outside of Comet and is protected internally through a number of security measures.

Unless interim injunctive relief is granted through its *ex parte* Application, Comet will suffer immediate and irreparable harm as Comet's most valuable trade secrets will end up in the hands of its industry competitor and significantly disadvantage Comet's ability to compete. Comet therefore respectfully requests that this Court grant Comet's *ex parte* Application for a temporary restraining order enjoining Beuerman and any other person or entity participating with or acting for, on behalf of, or in concert with Beuerman:

1. From accessing, using or disclosing, for any purposes, Comet's trade secret and confidential information, including but not limited to information related to Comet's Generation 3.0 technology and the Da Vinci project (as described in detail in the accompanying Memorandum of Points and Authorities);

2. From altering, destroying, erasing, losing or otherwise disposing of any evidence or other material, in any form and including that which may now reside at XP Power, relating to this action, including but not limited to: (a) Comet's trade secret and confidential information, including but not limited to Comet's Generation 3.0 technology and the Da Vinci project; and (b) any devices, drives, computers, tablets, phones, electronic media, emails and email accounts, and cloud storage that contain Comet's trade secret and confidential information, including but not limited to Comet's Generation 3.0 technology and the Da Vinci project; and

3. From violating his confidentiality and return of property agreements with Comet. Comet also asks that the Court order Beuerman to return to Comet, through Comet's undersigned

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

counsel: (a) Comet's trade secret and confidential information, including but not limited to information related to Comet's Generation 3.0 technology and the Da Vinci project; and (b) any devices, drives, computers, tablets, phones, electronic media, emails and email accounts, and cloud storage that contain Comet's trade secret and confidential information, including but not limited to Comet's Generation 3.0 technology and the Da Vinci project.

Comet also respectfully requests an order to show cause why a preliminary injunction should not issue enjoining and imposing the same restrictions as set forth above.

Finally, Comet requests that the Court issue an order for expedited discovery so that Comet may depose Beuerman and send discovery demands to determine:

1.      The company property Beuerman took from Comet, including the trade secret and confidential information that is the subject of this action;

2.      The current location of any Comet property taken by Beuerman, including the trade secret and confidential information that is the subject of this action;

3.      Whether, when and what trade secret and confidential information Beuerman has disclosed to his new employer, XP Power; and

4.      Whether and what trade secret and confidential information Beuerman is using in the course of his employment at XP Power.

This Renewed *ex parte* Application is based on the Complaint, the Renewed *Ex Parte* Application, the Memorandum of Points and Authorities, the Declarations of Andre Gredé, Sam Rubin, Robert Jardim, Matthew Miller, and Nisha Patel and the exhibits thereto, the Proposed Order and such other evidence and argument that the court may consider at the hearing of the Application.

Comet filed its *ex parte* Application on March 7, 2018.  This Court denied the *ex parte* Application on March 9, 2018 because Comet failed to provide notice of the *ex parte* Application and did not demonstrate a sufficient showing to issue a temporary restraining order without notice.  Comet intended to provide notice and had a misunderstanding regarding the need to first obtain a hearing date and time for the *ex parte* Application.  Notice of the *ex parte* Application was given by sending Beuerman a copy of the Complaint, the *ex parte* Application, the

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

1  Memorandum of Points and Authorities, the Declaration of Andre Gredé, Sam Rubin, Robert

2  Jardim and Matthew Miller, and the exhibits thereto, and the Proposed Order by hand delivery by

3  a registered process service to his home address on March 9, 2018. (Declaration of Nisha Patel in

4  Support of Comet's Renewed *Ex Parte* Motion for Temporary Restraining Order, Order to Show

5  Cause Why Preliminary Injunction Should not Issue and Order Permitting Expedited Discovery

6  ("Patel Decl."), ¶ 2.) Notice of this Renewed *Ex Parte* Application (except for this sentence and

7  the next and the last paragraph of the Declaration of Nisha Patel regarding notice to Beuerman)

8  was given by sending Beuerman a copy of the Renewed *Ex Parte* Motion, the Memorandum of

9  Points and Authorities, the Declaration of André Grede, Sam Rubin, Robert Jardim, Matthew

10  Miller, Nisha Patel and the Proposed Order by email to Beuerman's last know email address on

11  March 12, 2018 and also by hand delivery by a registered process service to his home address on

12  March 12, 2018. (Patel Decl., ¶ 3.) Comet also sent Beuerman a letter explaining that the *Ex*

13  *Parte* Application filed on March 7, 2018 was denied and that it therefore would file this

14  Renewed *Ex Parte* Application with an updated statement regarding notice. (Patel Decl., ¶ 3.)

15

16  Dated: March 13, 2018                              Squire Patton Boggs (US) LLP

17

18                                                                    By: /s/Matthew F. Miller
                                                                            Matthew F. Miller
19                                                                         Nisha S. Patel
                                                                            Attorneys for Plaintiff
20                                                                         COMET TECHNOLOGIES USA INC.

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

1
2

**TABLE OF CONTENTS**
**RE MEMORANDUM OF POINTS AND AUTHORITIES**

Page

3    I.    INTRODUCTION ................................................................................................ 5

4    II.    STATEMENT OF FACTS ................................................................................. 6

5          A.    Comet's Business and Diligent Protection of Its Trade Secret and
                Confidential Information............................................................................ 6

6          B.    Beuerman's Duties and Promises to Protect Trade Secret and Confidential
                Information................................................................................................. 8

7          C.    Beuerman's Unlawful Theft of Comet's Trade Secret and Proprietary
                Information............................................................................................... 10

8
9          D.    Beuerman's Resigns From Comet and Reaffirms his Promises to Protect
                Trade Secret / Confidential Information ................................................. 12

10         E.    Beuerman's Misappropriation has Caused and Will Continue to Cause
                Irreparable Harm to Comet ..................................................................... 14

11   III.   LEGAL ARGUMENT ..................................................................................... 14

12         A.    Legal Standard for Granting Temporary Restraining Order and Preliminary
                Injunction ................................................................................................ 14

13         B.    Comet is Likely to Suffer Irreparable Harm if Injunctive Relief is not
                Granted .................................................................................................... 15

14         C.    Comet has a Reasonable Likelihood of Success on the Merits............... 16

15               1.    Beuerman Misappropriated Trade Secrets in Violation of the
                      federal Defend Trade Secrets Act and California's Uniform Trade
16                    Secrets Act ....................................................................................... 16

17               2.    Beuerman Breached his Contracts with Comet ........................ 19

         D.    The Balance of Hardships Strongly Favors Comet................................. 21

18         E.    An Injunction is in the Public Interest .................................................... 21

19         F.    No Injunction Bond Should Be Required ............................................... 22

20         G.    The Court Should  Order Beuerman to Return and Otherwise Preserve All
                Taken Information Pending Trial............................................................. 22

21         H.    This Court Should Permit Plaintiff Limited Expedited Discovery ....................... 23

22   IV.    CONCLUSION................................................................................................ 25

23
24
25
26
27
28

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alliance for Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011)...................................................................................14

*Bank of America, N.A. v. Lee*,
    No. CV 08-5546 CAS, 2008 U.S. Dist. LEXIS 110410 (C.D. Cal. Sept. 22,
    2008) ........................................................................................................................21

*Boardman v. Pac. Seafood Grp.*,
    822 F.3d 1011 (9th Cir. 2016).................................................................................14

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
    No. 04cv2562 JM (LSP), 2005 U.S. Dist. LEXIS 45238 (S.D. Cal. May 31,
    2005) .........................................................................................................15, 18, 19

*Henry Schein, Inc. v. Cook*,
    191 F. Supp. 3d 1072 (N.D. Cal. 2016) .......................................................15, 19, 22

*Imi-Tech Corp. v. Gagliani*,
    691 F. Supp. 214 (S.D. Cal. 1986) ...........................................................................15

*Jorgensen v. Cassidy*,
    320 F. 3d 906 (9th Cir. 2003).....................................................................................22

*KLA-Tencor Corp. v. Murphy*,
    717 F. Supp. 2d 895 (N.D. Cal. 2010) ..............................................................23, 24

*Morlife, Inc. v. Perry*,
    56 Cal. App. 4th 1514 (1997).....................................................................................21

*Oculus Innovative Sciences, Inc. v. Nofil Corp.*,
    No. C 06-1686-SI, 2007 U.S. Dist. LEXIS 86305 (N.D. Cal. Nov. 15, 2007).........20

*OOO Brunswick Rail Mgmt. v. Sultanov*,
    No. 5:17-cv-00017-EJD, 2017 U.S. Dist. LEXIS 2343 (N.D. Cal. Jan. 6, 2017)....23

*Posdata Co. v. Seyoung Kim*,
    No. C-07-02504 RMW, 2007 U.S. Dist. LEXIS 48359 (N.D. Cal. June 27,
    2007) ........................................................................................................14, 15, 18

*Pyro Spectaculars North, Inc. v. Souza*,
    861 F. Supp. 2d 1079 (E.D. Cal. 2012)..........................................................21, 22, 24

*Reichert v. General Insurance Co.*,
    68 Cal. 2d 822 (1968) .................................................................................................19

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
   208 F.R.D. 273 (N.D. Cal. 2002) ........................................................................................24

*Stanley v. University of Southern California*,
   13 F.3d 1313 (9th Cir. 1994) ............................................................................................14

*TMX Funding, Inc. v. Impero Techs., Inc.*,
   No. C 10-00202 JF (PVT), 2010 U.S. Dist. LEXIS 37064 (N.D. Cal. Mar. 18,
   2010) ..............................................................................................................................15, 19

*U.S. v. Odessa Union Warehouse*,
   833 F.2d 172 (9th Cir. 1987) ............................................................................................14

*Western Directories, Inc. v. Golden Guide Directors, Inc.*,
   No. C 09-1625 CW, 2009 U.S. Dist. LEXIS 52023 (N.D. Cal. Jun. 8, 2009) ..........................15

**Statutes**

18 U.S.C. § 1839(3) ...........................................................................................................17

18 U.S.C. § 1839(5) ...........................................................................................................17

18 U.S.C. § 1839(6) ...........................................................................................................17

Cal. Civ. Code § 3426.1(a) ...............................................................................................17

Cal. Civ. Code § 3426.1(b) ...............................................................................................17

Cal. Civ. Code § 3426.1(d) ...............................................................................................17

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Comet Technologies USA Inc. ("Comet" or "Plaintiff") brings this action to prevent its ex-employee Douglas Beuerman ("Beuerman" or "Defendant") from exploiting its most valuable research and development trade secrets at a key competitor, XP Power LLC ("XP Power").  Just days after receiving an offer of employment from XP Power, and immediately prior to giving notice of his resignation to Comet, Beuerman accessed and downloaded to a private external memory drive Comet's invaluable trade secret and confidential information. The information Beuerman stole detailed Comet's newest intellectual property that it spent many millions of dollars and a substantial amount of time developing.

This trade secret and confidential information included schematics, 3D drawings and models, assembly and production instructions, simulations, measurement results, pictures of newly assembled and tested components, and drawings describing future concepts—essentially everything needed to reproduce Comet's RF power amplifiers.  This information is not available to competitors or others outside of Comet and is protected internally through a number of security measures.  Beuerman had no legitimate business purpose accessing or downloading these documents and was not authorized by Comet to do so.  In fact, prior to his last days of employment, Beuerman had never before accessed, contributed, downloaded or used such documents in the course of his employment at Comet.

Within days of this mass taking of information, Beuerman repeatedly lied in his exit interview about copying any Comet company documents to an external memory drive or other media and falsely stated that he had returned all of Comet's property.  He then lied about his next employer, refusing to identify them and falsely claiming they were not in competition with Comet.  As well known to Beuerman, XP Power directly competes with Comet as both companies sell generators to companies in the semiconductor industry such as Applied Materials. The intellectual property stolen by Beuerman would clearly benefit XP Power giving it an unfair competitive advantage over Comet.

Beuerman's theft of documents and lies about doing so within days of performing such

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

actions demonstrate an intent to use Comet's trades secrets to unfairly compete with Comet. Such actions also violate his Confidentiality Agreement, Separation of Employment Agreement, Termination Certification and Comet's Technology Use Policy.  This blatant disregard for Comet's rights to its own trade secret and confidential information along with his lies regarding the return of Comet's property strongly suggest that Beuerman will continue his unlawful conduct and further attempt to conceal such conduct.

Unless immediate injunctive relief is granted, Comet will suffer immediate and irreparable harm as Comet's most valuable trade secrets will end up in the hands of its industry competitor and significantly disadvantage Comet's ability to compete; once this information is disclosed, there can be no effective un-ringing of this technology bell.  Comet therefore respectfully requests that this Court grant Comet's *ex parte* Application for Temporary Restraining Order and subsequently a Preliminary Injunction and Order Permitting Expedited Discovery.

## II.    **STATEMENT OF FACTS**

### A.    **Comet's Business and Diligent Protection of Its Trade Secret and Confidential Information**

The Comet Group is a globally leading technology firm, headquartered in Switzerland. (Declaration of Robert Jardim in Support of Comet's Application for Temporary Restraining Order, Order to Show Cause Why Preliminary Injunction Should not Issue and Order Permitting Expedited Discovery ("Jardim Decl."), ¶ 3.)  It operates in the United States through a wholly owned subsidiary, Plaintiff Comet Technologies USA Inc.  (*Id.*)  The Comet Group has a division called Plasma Control Technologies ("PCT") which has an important presence in San Jose, California.  (*Id.*)  Here, Plaintiff Comet develops and produces radio frequency ("RF") technology, vacuum technology and power equipment ("matchboxes") for sale to customers in the semiconductor industry worldwide.  (*Id.*)

In Europe, the Comet Group develops generators.  (*Id.*, ¶ 4.)  Matchboxes and generators often are sold as a package, but are completely different products.  (*Id.*)  Generators serve as the RF power source by generating high frequency power and controlling that power in a very precise fashion.  (*Id.*)  Matchboxes are connected and located behind the generator and transform the

generator's RF output signal so that it can be supplied into the plasma chamber (which is the final application used by the end customer). (*Id.*) Within Comet PCT, the development of generators and matchboxes is handled by separate teams. (*Id.*)

Comet stands at the forefront of RF technology and is constantly innovating and developing new RF solutions. (Declaration of André Grede in Support of Comet's Application for Temporary Restraining Order, Order to Show Cause Why Preliminary Injunction Should not Issue and Order Permitting Expedited Discovery ("Grede Decl."), ¶ 4.) Most recently, the Comet Group's European team undertook development of new RF controls, embedded systems and digital measurements under the internal project name "Da Vinci." (*Id.*) The Comet Group has devoted many millions of dollars towards this Da Vinci project. (*Id.*) Indeed, Da Vinci represents one of the most important ongoing development projects for the Comet Group, and Comet Group expects to generate annual turnovers based on this technology of several hundred million dollars. (*Id.*) Through its Da Vinci project, the Comet Group expects a significant first-mover advantage over its industry competitors. (*Id.*)

Comet has acted reasonably and diligently to protect the secrecy of its trade secret and confidential information related to its RF technology, especially regarding control, embedded systems and digital measurements, including the Da Vinci project, by the following measures:

- requiring employees to execute Proprietary Information, Inventions and Non-Compete Agreements, which includes confidentiality, non-disclosure, and return of property obligations;

- requiring employees to sign acknowledgments in which they agree to abide by Comet's non-disclosure/confidentiality agreements and Technology Use Policies, which prohibit improper use or disclosure of Comet's trade secret and confidential information;

- using a database exchange and collaboration system called Jira/Confluence ("Confluence"), which allows permission assignment ("who can see what" and tracking "who changed what, when and why");

- granting permission rights to the Confluence system in a restrictive fashion: only

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

members of the R&D core team have access to it, and mirroring the hierarchy levels in the Comet R&D organization;

- maintaining high password and technical standards for access and security of the Confluence database;

- performing exit interviews in which Comet's managers discuss the continuing nature of one's duties of confidentiality to Comet, as well as detailed questions about return of company documents, diligently seeking return of its property including its trade secret and confidential information; and

- requiring that employees reaffirm their confidentiality, non-disclosure, and return of property obligations upon termination of employment through execution of a Separation of Employment Agreement and Termination Certificate which reiterates one's continuing confidentiality obligation and seeks affirmative representation that no company documents are retained.  (Jardim Decl., ¶ 5.)

## B.    Beuerman's Duties and Promises to Protect Trade Secret and Confidential Information

Comet hired Beuerman in 2011 as Director of Match Network Research and Development ("R&D") in the San Jose location of the Plasma Control Technologies ("PCT") Business Unit, reporting directly to the Comet Group's Vice President of Global R&D.  (*Id.*, ¶ 6.)  Beuerman was responsible for providing management, leadership and all oversight functions for Match Network R&D.  (*Id.*)  Beuerman's responsibilities included all aspects of managing the 19 employees of the PCT R&D group in the San Jose location (including hiring and firing employees), R&D document management for the San Jose location (including file storage, retrieval and sharing), and managing product transfers from R&D into production.  (*Id.*)

Since mid-2017, Beuerman's primary role at Comet was to manage and lead the San Jose software and hardware teams, which were working on the improvement of the actual matchbox controls (based on an older technology "Generation 2.0," which was first developed in or around 2011).  (Grede Decl., ¶ 5.)  This technology was handled exclusively in the San Jose location, and had no technological interface with the latest "Generation 3.0" Da Vinci technology, which was

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

1   and is currently under development in Europe and applicable only to generators. (*Id.*)

2       In connection with his employment with Comet, Beuerman entered into a Proprietary

3   Information, Inventions and Non-Compete Agreement (the "Confidentiality Agreement") with

4   Comet on February 11, 2016, which provides that:

5           [Beuerman] agree[s] to hold in confidence and not directly or
            indirectly use or disclose, either during or after termination of [his]
6           employment with [Comet], any Proprietary Information [he]
            obtain[s], access[es] or create[s] during the period of [his]
7           employment, whether or not during working hours…[Beuerman]
            agree[s] not to make copies of such Proprietary Information except
8           as authorized by the Company.  [Beuerman] will not reproduce or
            appropriate for [his] own use, or for the use of others, any property,
9           Proprietary Information or Company Inventions.

10  (Jardim Decl., ¶ 7, Ex. A.)  The Confidentiality Agreement defines Proprietary Information as

11  follows:

12          any and all confidential and/or proprietary knowledge, data or
            information of [Comet], its parents, subsidiaries, and affiliated
13          entities, customers and suppliers, including but not limited to
            information relating to employees, customer lists, products,
14          services, processes, know-how, business plans, designs, formulas,
            methods, developmental or experimental work, improvements,
15          discoveries, inventions, ideas, source and object codes, data,
            programs, other works of authorship, and plans for research and
16          development…

17  (*Id.*)  The Confidentiality Agreement also provides that:

18          Upon termination of [Beuerman's] employment with [Comet]…
            [Beuerman] will deliver to the person designated by [Comet] all
19          originals and copies of all Proprietary Information in [his]
            possession or control…and shall permit [Comet] to inspect and
20          delete files containing Proprietary Information from personal
            computing devices [Beuerman] may own… such as personal
21          computers, personal digital assistants, tablets, etc.

22  (*Id.*)  Beuerman also agreed to comply with Comet's Technology Use Policy in Comet's

23  Employee Handbook, which provides:

24          All Company IT Assets, including any and all data accessible by or
            set forth therein, are furnished or made available to users are
25          property of COMET, are intended for business use only, and shall
            only be used for authorized Company business…
26
            Company data, databases, programs, and other proprietary
27          information represent Company assets and can only be used for
            authorized Company business. Use of Company assets for personal
28          gain or benefit is prohibited. Sharing Company proprietary

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

information with unauthorized Company personnel or third parties is prohibited.

Users are prohibited from:

> Accessing, obtaining, or using information from Company IT Assets for any purpose other than advancing the Company's business interests (e.g., accessing information on a Company IT Asset for the purpose of establishing or assisting a competing enterprise).

> Manually or systematically forwarding, or transferring company data to any third party file storage or sharing service is prohibited unless approved by IT.

(*Id.*, ¶ 8, Ex. B.)

### C.    **Beuerman's Unlawful Theft of Comet's Trade Secret and Proprietary Information**

In the days leading up to his resignation, Beuerman queried a webpage in an effort to discern methods to conceal his unauthorized download of trade secret and confidential information.  (Declaration of Sam Rubin in Support of Comet's Application for Temporary Restraining Order, Order to Show Cause Why Preliminary Injunction Should not Issue and Order Permitting Expedited Discovery ("Rubin Decl."), ¶ 8)  He also performed google searches and queried a webpage to determine the legal implications of recruiting Comet's employees despite a contractual employee non-solicitation clause.  (*Id.*, ¶ 6.)  On January 6, Beuerman performed the following google searches: (1) "california laws recruiting employees;" (2) "prohibited hiring practices California;" and (3) "can i recruit employees from my previous employer."  (*Id.*)  Beuerman also visited a webpage titled "Legally Poaching Employees From Another Company (and Preventing It).  (*Id.*)  Then on January 14, 2018, the same day on which Beuerman would misappropriate copious amount of Comet's trade secret and confidential information, Beuerman queried an internet site providing instructions on how to avoid detection when emailing documents to personal Google accounts.  (*Id.*, ¶ 8.)  The webpage detailed how Beuerman could prevent others from "Find[ing] out what searches you did or sites you visited" and from "See[ing] that your account was signed in."  (*Id.*)

On or about January 11, 2018, Beuerman received an offer of employment from XP Power.  (Rubin Decl., ¶ 7; Miller Decl., ¶ 2.)  XP Power is a provider of power solutions in direct

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

competition with Comet. (Jardim Decl., ¶ 9.) XP Power recently purchased Comdel, Inc. ("Comdel"), a company that, like Comet, sells generators to companies in the semiconductor industry such as Applied Materials. (*Id.*)

Prior to January 14, 2018, Beuerman only accessed sites on Confluence where he had an immediate and practical "need to know" as was the practice and culture at Comet. (Rubin Decl., ¶ 9; Grede Decl., ¶ 7.) Beuerman therefore had not previously accessed any sites on Confluence applicable to the Generation 3.0 technology and the Da Vinci project. (Rubin Decl., ¶ 9; Grede Decl., ¶ 7.) On or about Sunday January 14, 2018, immediately after receiving the offer of employment from XP Power and one day prior to his resignation from Comet, Beuerman used his work laptop to log into Confluence. (Rubin Decl., ¶ 9; Grede Decl., ¶ 6.) He entered into the R&D team space, and then entered into the separate space "RF Power Amplifiers." (Rubin Decl., ¶ 9; Grede Decl., ¶ 6.) Beuerman had never before accessed or contributed to this space. (Rubin Decl., ¶ 9; Grede Decl., ¶ 7.) Beuerman then accessed and downloaded to a private external memory device over one hundred documents from various Sub-Folders containing Comet's newest intellectual property developments by Comet's European R&D teams (including the Da Vinci project). (Rubin Decl., ¶¶ 5, 10; Grede Decl., ¶ 6.)

The files Beuerman accessed and downloaded contained all information required to reproduce the future RF power amplifiers, combining networks and control systems including:

- Complete schematics and PCB layouts;
- 3D drawings and models of new components;
- Assembly and production instructions of new components;
- Simulation as well as measurement results;
- Pictures of newly assembled and tested components; and
- Drawings describing the intellectual property for future RF power delivery concepts.

(Rubin Decl., ¶¶ 10-11; Grede Decl., ¶ 6.) Beuerman methodically accessed these folders, one after the other. (Rubin Decl., ¶¶ 10-11; Grede Decl., ¶ 6.) On the most competitively sensitive pages, he used the function "download all attachments/data from this page" for downloading large swaths of Comet's developing technology documents. (Rubin Decl., ¶¶ 10-11; Grede Decl.,

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

¶ 6.)  He did not download the data to his work laptop (as he would falsely state during his exit interview), instead copying directly to a private external memory device.  (Rubin Decl., ¶¶ 5, 10-11; Grede Decl., ¶ 6; Jardim ¶ 13.)

### D.    Beuerman's Resigns From Comet and Reaffirms his Promises to Protect Trade Secret / Confidential Information

On or about January 15, 2018, Beuerman accepted his position at XP Power and then provided his direct supervisor André Grede with a letter notifying Comet of his resignation of employment from Comet.  (Grede Decl., ¶ 6; Miller Decl., ¶ 2; Rubin Decl., ¶ 7; Jardim Decl., ¶ 10.)  Beuerman's last day of employment with Comet was January 26, 2018.  (Jardim Decl., ¶ 10.)  On that day, Comet conducted an exit interview with Beuerman.  (*Id.*)  An outside counsel to Comet attended the interview; an action that should have highlighted to Beuerman the importance that Comet placed upon his honesty and candor during this interview.  (*Id.*)

During the exit interview, Beuerman reaffirmed his promises to protect trade secret and confidential information and return all Comet property.  (*Id.*, ¶ 11.)  Beuerman executed a Separation of Employment Agreement that provided:

> Employee reaffirms and agrees to observe and abide by the terms of the confidentiality agreements Employee signed during Employment.

(*Id.*, ¶ 11, Ex. C.)  The Separation of Employment Agreement also provided that:

> Employee acknowledges that Employee has delivered to the Company, or destroyed in a manner sufficient to ensure confidentiality, all documents, including records, data, notes, reports, e-mail messages, proposals, lists, and correspondence, whether in hard copy form or electronically stored that were provided to Employee by the Company, developed or obtained by Employee as a result of Employee's working relationship with the company, or otherwise belonging to the Company, its parents, affiliates, successors or predecessors…

(*Id.*)  Beuerman also signed a Termination Certification with Comet during his exit interview in which he certified as follows:

> I hereby certify that I do not have in my possession (whether in hard copy or electronic form on any computer, tablet, smartphone, storage device, electronic mail or cloud drive), nor have I failed to return, any devices, equipment, and all originals and copies of all Proprietary Information in my possession or control, including but not limited to drawings, specifications, documents, records, models,

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

notes, memorandum or any other material belonging to COMET Technologies USA, Inc. (the "Company") or to its parent company(ies), subsidiaries, or affiliates.

I further certify that I have not transferred outside the Company's or its parent company(ies), subsidiaries', or affiliates' networks any Proprietary Information (whether in hard copy or electronic form on any computer, tablet, smartphone, storage device, electronic mail or cloud drive).

. . .

I further certify that I have complied with all the terms of the Company's Proprietary Information, Inventions And Non-Solicitation Agreement signed by me…

I further agree that, in compliance with the Proprietary Information, Inventions And Non-Solicitation Agreement, I will preserve as confidential all Company Property Information including any and all confidential and/or proprietary knowledge, data or information of the Company, its parents, subsidiaries, and affiliated entities, customers and suppliers, including but not limited to information relating to employees, customer lists, products, services, processes, know-how, business plans, designs, formulas, methods, developmental or experimental work, improvements, discoveries, inventions, ideas, source and object codes, data, programs, other works of authorship, and plans for research and development. I will not, at any time, use the Company's Proprietary Information in any manner including but not limited to soliciting the business of any customer of the Company.

(*Id.*, ¶ 12, Ex. D.)

During the exit interview, Comet confronted Beuerman about accessing and viewing various trade secret and confidential information in Comet's Confluence data system that were not related to Beuerman's ongoing work at Comet. (*Id.*, ¶ 13.) Beuerman did not deny accessing those pages and was unable to come up with a rational explanation for his actions. (*Id.*) Beuerman then lied, affirmatively stating that he only downloaded certain documents to his work laptop and to no other devices. (*Id.*) When specifically asked to turn in any external memory devices or thumb drives containing Comet property, Beuerman stated that he had no such devices or drives. (*Id.*) Finally, he lied about his next employer, refusing to identify them and falsely claiming they were not in competition with Comet. (*Id.*) Beuerman was well aware of the fact that XP Power directly competes with Comet as both companies sell generators to companies in the semiconductor industry such as Applied Materials. (*Id.*)

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

E.   **Beuerman's Misappropriation has Caused and Will Continue to Cause Irreparable Harm to Comet**

Beuerman's conduct, particularly (1) his mass download of trade secret and confidential information immediately prior to leaving Comet; (2) his repeated lies to Comet about downloading and retaining such information; (3) his refusal to disclose his new employer to Comet and (4) his lie that the new employer did not compete with Comet, all suggest that Beuerman will use such trade secret and confidential information to benefit XP Power at the direct detriment of Comet.  Beuerman's conduct and threatened future conduct have and will continue to cause irreparable harm to Comet.  Such use destroys any competitive advantage that Comet has gained in the industry and will have gained in the industry from exploitation of this technology.

III.   **LEGAL ARGUMENT**

A.   **Legal Standard for Granting Temporary Restraining Order and Preliminary Injunction**

A plaintiff seeking a preliminary injunction must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1020 (9th Cir. 2016) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)); *Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994).  "Temporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Posdata Co. v. Seyoung Kim*, No. C-07-02504 RMW, 2007 U.S. Dist. LEXIS 48359, at * 11-12 (N.D. Cal. June 27, 2007).

Alternatively, a preliminary injunction may be granted on a showing that: (1) serious questions are raised and the balance of hardships tips sharply in favor of the moving party; or (2) the moving party will probably succeed on the merits and will possibly suffer irreparable injury without injunctive relief. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  "These formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability decreases." *U.S. v. Odessa Union Warehouse*, 833 F.2d 172, 174 (9th Cir. 1987).

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

**B.**    **Comet is Likely to Suffer Irreparable Harm if Injunctive Relief is not Granted**

"California courts have presumed irreparable harm when proprietary information is misappropriated." *TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202 JF (PVT), 2010 U.S. Dist. LEXIS 37064, at * 24 (N.D. Cal. Mar. 18, 2010); *see also Western Directories, Inc. v. Golden Guide Directors, Inc.*, No. C 09-1625 CW, 2009 U.S. Dist. LEXIS 52023, at * 18-19 (N.D. Cal. Jun. 8, 2009) ("The Court presumes that Plaintiff will suffer irreparable harm if its proprietary information is misappropriated."). A plaintiff can show irreparable harm when it will likely "suffer injury in the form of lower sales and potential diminution of market share." *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04cv2562 JM (LSP), 2005 U.S. Dist. LEXIS 45238, at * 12 (S.D. Cal. May 31, 2005); *see also Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm"). Irreparable harm is also shown by "evidence of [plaintiff's] investment of time and money" in the development of the misappropriated trade secrets "since harm to [plaintiff's] competitive position lacks any adequate remedy at law." *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986); *Posdata*, 2007 U.S. Dist. LEXIS 48359 at * 11-12 ("[Plaintiff's] technology at issue has been developed with substantial company resources and at considerable cost, thus development by [a competitor] of this technology or its dissemination may result in irreparable harm to plaintiff.").

Beuerman's actions over the days preceding his resignation from Comet make clear that his motive for stealing and retaining Comet's trade secret and confidential information—and then lying about these actions—is to harm Comet and benefit Beuerman and his new employer. While employed at Comet, Beuerman accepted an offer of employment with one of Comet's main competitors, XP Power. Beuerman almost immediately then accessed and downloaded numerous documents related to Comet's newest Generation 3.0 Da Vinci technology related to generators. Beuerman was not permitted to do so and had no business reason to do so as he was working on the older Generation 2.0 technology rather than the new Generation 3.0 technology. In fact, prior to his unauthorized access on January 14, Beuerman had not accessed information related to this

product.  Beuerman then repeatedly lied to Comet about his conduct of downloading and retaining valuable trade secret and confidential information and misrepresented his return and non-retention of such company property and information.  This is in direct violation of his Confidentiality Agreement, Technology Use Policy, Separation of Employment Agreement and Termination Certification.

As a result of Beuerman's behavior, Comet legitimately fears that Beuerman already has, will use and/or disclose the trade secret and confidential information for the benefit of his new employer XP Power in its development and sale of next-generation generators.  Comet has devoted many millions of dollars and substantial time towards its Generation 3.0 Da Vinci technology.  If its trade secrets are used by a competitor such as XP Power (through Beuerman's direct actions), Comet stands to lose its first-mover advantage and its incredible investment will be negated or muted.  Beuerman's actions create a risk of potential injury in the form of loss of business, loss of business advantage, and goodwill—none of which can be recompensed fully by a damages award.  Beuerman's misappropriation of trade secrets exposes Comet to a very likely risk of significant, irreparable injury to its business now and in the future, and must be enjoined.

**C.**    **Comet has a Reasonable Likelihood of Success on the Merits**

1.    Beuerman Misappropriated Trade Secrets in Violation of the federal Defend Trade Secrets Act and California's Uniform Trade Secrets Act

The standards for establishing misappropriation of trade secrets under federal and California law are similar.  Under the federal Defend Trade Secrets Act ("DTSA"), a "trade secret" includes:

> all forms and types of…business, scientific, technical…or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    18 U.S.C. § 1839(3).  California Uniform Trade Secrets Act ("CUTSA") defines trade secrets as:

2         information, including a formula, pattern, compilation, program,
3         device, method, technique, or process, that: (1) Derives independent
          economic value, actual or potential, from not being generally
          known to the public or to other persons who can obtain economic
4         value from its disclosure or use; and (2)  Is the subject of efforts
          that are reasonable under the circumstances to maintain its secrecy.
5
     Cal. Civ. Code § 3426.1(d).  Both the DTSA and CUTSA define "misappropriation" as:
6

7         (A) acquisition of a trade secret of another by a person who knows
          or has reason to know that the trade secret was acquired by
8         improper means; or

9         (B) disclosure or use of a trade secret of another without express or
          implied consent by a person who—
10

11             (i) used improper means to acquire knowledge of the trade
               secret;

12             (ii) at the time of disclosure or use, knew or had reason to
               know that the knowledge of the trade secret was—
13

14                  (I) derived from or through a person who had used
                    improper means to acquire the trade secret;

15                  (II) acquired under circumstances giving rise to a
                    duty to maintain the secrecy of the trade secret or
16                  limit the use of the trade secret; or

17                  (III) derived from or through a person who owed a
                    duty to the person seeking relief to maintain the
18                  secrecy of the trade secret or limit the use of the
                    trade secret; or
19
               (iii) before a material change of the position of the person,
20             knew or had reason to know that—

21                  (I) the trade secret was a trade secret; and

22                  (II) knowledge of the trade secret had been acquired by
                    accident or mistake;
23
     18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).  Finally, both the DTSA and CUTSA define
24
     "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach
25
     of a duty to maintain secrecy, or espionage through electronic or other means…." 18 U.S.C. §
26
     1839(6); Cal. Civ. Code § 3426.1(a).
27
          Beuerman's stealing of Comet's trade secret and confidential information is a direct
28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    violation of the DTSA and CUTSA.  First, the information about the Generation 3.0 Da Vinci

2    project at issue squarely falls within the DTSA and CUTSA's definition of trade secrets.

3    Beuerman accessed, downloaded and took schematics, 3D drawings and models, assembly and

4    production instructions, simulations, measurement results, pictures, and drawings of the new RF

5    power amplifiers, combining networks and control systems—essentially everything needed to

6    reproduce one of Comet's newest and most valuable technologies.  *See e.g. Posdata*, 2007 U.S.

7    Dist. LEXIS 48359 at * 3-4, 14-15 (finding that the architecture as well as "the combination of

8    the processors and components and their design and layout on the PCB [Printed Circuit Board],

9    the source code and test results are trade secrets); *Eldorado Stone,* 2005 U.S. Dist. LEXIS 45238

10   at * 10 (finding that "batch and mix designs" are trade secrets, including the "precise formulas

11   and application techniques" for making stone veneer products).

12         The information at issue derives independent economic value from not being generally

13   known, and not being readily ascertainable through proper means by, another person who can

14   obtain economic value from the disclosure or use of the information.  The Generation 3.0 Da

15   Vinci technology is not presently utilized in generators currently on the market.  It has taken

16   Comet's research and development teams substantial time and money to develop and Comet

17   anticipates that this innovative technology will gain Comet an important first-mover advantage

18   and several hundred million dollars in revenues.  Naturally, Comet took reasonable measures to

19   keep the information related to this technology a secret.  In addition to the general measures

20   Comet has in place to protect confidential information, Comet required that Beuerman and other

21   employees execute a Proprietary Information, Inventions and Non-Compete Agreement, which

22   includes confidentiality, non-disclosure, and return of property obligations.  It also required

23   employees to abide by its Technology Use Policy, which specifically prohibits employees from

24   accessing Comet's company information for the purposes of assisting a competing enterprise and

25   from forwarding or transferring company data to a third party file storage or sharing service.  The

26   information Beuerman accessed was also stored in Confluence (a database exchange and

27   collaboration system) that was password protected with restricted permission rights.  As a final

28   measure, Comet performed exit interviews discussing the employee's confidentiality and return

of property obligations and obtaining a Separation of Employment Agreement and Termination Certification, which again reiterates the employee's continuing confidentiality and return of property obligations. *See e.g. Eldorado Stone*, 2005 U.S. Dist. LEXIS 45238 at * 10 (trade secrets protected by password-protected files, limited access, and instructions to employees that such information is confidential); *TMX Funding*, 2010 U.S. Dist. LEXIS 37064 at * 13 (holding that plaintiff demonstrated steps taken to protect secrecy of confidential information through a confidentiality agreements and policies and password protection of company computers and networks).

Here, Beuerman has actually misappropriated Comet's trade secrets through improper means. He knew or had reason to know that his actions in accessing, downloading, and taking the Generation 3.0 Da Vinci information from Comet constituted theft or, at the very least, a breach of his contractual duties to maintain the secrecy of this information. This is made abundantly clear through Beuerman's attempt at concealing his activities on his work computer and his repeated lies to Comet about such activities during his exit interview. For example, when specifically asked to turn in any external memory devices or thumb drives containing Comet property, Beuerman stated that he had no such devices or drives. *See e.g., Eldorado Stone*, 2005 U.S. Dist. LEXIS 45238 at * 11 (defendant misappropriated trade secrets by downloading trade secret information in violation of company policies); *Henry Schein*, 191 F. Supp. 3d at 1077 (plaintiff likely to succeed on the merits of its DTSA and CUTSA claims when defendant "e-mailed and downloaded, to her personal device, confidential information . . . before leaving her employment to work at a competitor"). Therefore, Comet is likely to succeed on the merits of its DTSA and CUTSA claims.

2.    Beuerman Breached his Contracts with Comet

Given Beuerman's egregious conduct described above, there can be little doubt that Comet will also succeed on its breach of contract claim. In order to prove a breach of contract claim, Comet must show the existence of a contract, plaintiff's performance or excuse for non-performance, defendant's breach of the contract, and resulting damages from the breach. *See Reichert v. General Insurance Co.*, 68 Cal. 2d 822, 830 (1968). Confidentiality agreements

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    similar to the ones Beuerman signed in this case are valid and enforceable in California, and a

2    breach of such an agreement is the appropriate subject of a breach of contract claim. *See, e.g.,*

3    *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-1686-SI, 2007 U.S. Dist. LEXIS 86305,

4    at * 8-17 (N.D. Cal. Nov. 15, 2007).

5          Here, it is indisputable that Beuerman entered into the following agreements with Comet:

6    the Proprietary Information, Inventions and Non-Compete Agreement (the "Confidentiality

7    Agreement"), Separation of Employment Agreement, and the Termination Certification.  (Jardim

8    Decl., ¶¶ 7, 11-12. Exs. A, C, D.)  Beuerman also agreed to abide by Comet's Technology Use

9    Policy. (*Id.*, ¶ 8. Ex. B.)  Comet has performed its obligations under these contracts and by the

10   terms of these contracts, Beuerman agreed to "hold in confidence and not directly or indirectly

11   use or disclose, either during or after termination," "not to make copies," and "not reproduce or

12   appropriate for [his] own use, or for the use of others," a wide variety of trade secret and

13   confidential information such as knowledge, data or information related to "products, services,

14   processes, know-how, business plans, designs, formulas, methods, developmental or experimental

15   work, improvements, discoveries, inventions, ideas, source and object codes, data, programs,

16   other works of authorship, and plans for research and development."  (*Id.*, ¶ 7. Ex. A.) Beuerman

17   also specifically agreed not to access, obtain or use such information "for any purpose other than

18   advancing [Comet's] business interests" and also agreed not to manually or systematically

19   forward or transfer such information to "any third party file storage or sharing service."  (*Id.*, ¶ 8.

20   Ex. B.)  Moreover, Beuerman agreed to return all trade secret and confidential information upon

21   termination of his employment with Comet.  (*Id.*, ¶¶ 11-12. Exs. C, D.)  Upon his termination,

22   Beuerman affirmatively certified that he had returned all such information and no longer has such

23   information in his possession. (*Id.*)

24          Based on the facts already presented to the Court at this very early stage, it is clear that

25   Beuerman did precisely the opposite of what his written agreements required.  Beuerman

26   accessed and downloaded to a personal external memory drive trade secret and confidential

27   information for no legitimate business reason.  He was not authorized by Comet to access and

28   download such information and presumably did so for his own personal gain and to assist XP

1  Power to gain an advantage over Comet.  Beuerman then took those files with him upon his

2  termination of employment and blatantly lied to Comet about such conduct.  Through his

3  egregious conduct, Comet has clearly demonstrated that it is likely to prevail on its breach of

4  contract claim against Beuerman.

5  **D.      The Balance of Hardships Strongly Favors Comet**

6  Here, Beuerman will suffer no hardship if the injunction is granted.  Beuerman has no

7  legitimate use for nor ownership rights in Comet's trade secret and confidential information,

8  while Comet has a very strong interest in ensuring that there is no unauthorized retention,

9  copying, disclosure, or use of its trade secret and confidential information.  Any such retention,

10  copying, disclosure or use very likely will result in a loss of competitive position in the industry,

11  and other competitive harms to Comet, for which monetary damages would not be adequate.

12  Comet merely seeks to enforce the status quo such that its trade secret and confidential

13  information is preserved and not disclosed to or used by competitors and others outside of Comet.

14  An injunction is the only means to obtain this assurance.  There is no hardship to Defendant nor

15  his employer; instead, the injunction will require Defendant to abide by the law and the

16  contractual promises he already made to Comet but has now decided to ignore.  *See Pyro*

17  *Spectaculars North, Inc. v. Souza*, 861 F. Supp. 2d 1079, 1092 (E.D. Cal. 2012) (balance of

18  hardships tips in favor of plaintiff seeking injunction when it "would essentially only require him

19  to abide by existing law regarding the unauthorized use of another's trade secrets").  Here, the

20  equities weigh heavily in favor of granting Comet an injunction.

21  **E.      An Injunction is in the Public Interest**

22  Finally, an injunction would support the public's interests in protecting trade secrets and

23  upholding enforceable confidentiality agreements between employers and employees.  *See*

24  *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (1997) (noting that protection of a company's

25  trade secrets is "fundamental to the preservation of our free market economic system"); *Bank of*

26  *America, N.A. v. Lee*, No. CV 08-5546 CAS (JWJX), 2008 U.S. Dist. LEXIS 110410, at * 22

27  (C.D. Cal. Sept. 22, 2008) ("While California has a strong public policy in favor of competition,

28  this interest yields to California's interest in protecting a company's trade secrets.").  The court

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK

has repeatedly ruled that injunctions preventing the misuse of trade secrets are firmly in the public's interest.  *See e.g., Pyro Spectaculars*, 861 F. Supp. 2d at 1093 ("an injunction specifically focused on preventing misuse of [Plaintiff's] trade secrets…would serve the policy of protecting trade secrets while simultaneously allowing lawful competition); *Henry Schein*, 191 F. Supp. 3d at 1078 (plaintiff may seek injunctive relief as "[p]ublic interest is also served by enabling the protection of trade secrets.").  As such, the court should grant the requested injunctive relief against Beuerman.

**F.      No Injunction Bond Should Be Required**

Federal Rule of Civil Procedure 65(c) "invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassidy*, 320 F. 3d 906, 919 (9th Cir. 2003) (internal citations omitted).  "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.*  Comet's requested relief will cause no damage or harm to Beuerman since he should never have stolen Comet's trade secret and confidential information in the first place. Mere compliance with the law and his contractual obligations does not cause an individual harm. Moreover, under his Confidentiality Agreements, Beuerman explicitly agreed to allow Comet to seek injunctive relief "without bond." (Jardim Decl., ¶ 7. Ex. A.)  Therefore, not only is a bond unnecessary, but Beuerman waived any bond under the express terms of his confidentiality agreement. *See e.g. Henry Schein*, 191 F. Supp. 3d at 1078 (no bond required for a TRO prohibiting defendant from accessing or using plaintiff's confidential information since it "will not cause any damage to [plaintiff's] legitimate business, and further because she agreed, in her employment agreements with [plaintiff], that [plaintiff] may seek injunctive relief without a bond.") This Court should reach the same conclusion here and no bond should be required.

**G.      The Court Should  Order Beuerman to Return and Otherwise Preserve All Taken Information Pending Trial**

Comet seeks a Court order requiring Beuerman to return all of Comet's trade secret and confidential information as well as the storage devices or media on which such information resides.  To the extent that Beuerman is not able to physically do so (e.g. for items stored in the

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

cloud or in a personal email account), Comet asks that the Court order Beuerman to preserve all evidence. "Parties have a duty to preserve evidence once a complaint is filed." *OOO Brunswick Rail Mgmt. v. Sultanov*, No. 5:17-cv-00017-EJD, 2017 U.S. Dist. LEXIS 2343, at * 3 (N.D. Cal. Jan. 6, 2017). To obtain an order imposing stricter preservation requirements, courts consider "(1) threats to preservation of evidence, (2) irreparable harm likely to result to the party seeking preservation, and (3) the capability of the custodian to maintain the evidence sought to be preserved." *Id.*

Here, Comet has satisfied all three of the requirements. First, given Beuerman's theft of the trade secret and confidential information, his lies to Comet about such conduct, and his attempt at covering up his internet activity prior to giving notice (presumably to hide documents he sent to his Google email account), there is a high likelihood that Beuerman either will delete the documents he downloaded to his external memory drives and other storage devices and services or "lose" those devices. There is also a high likelihood that he may destroy or erase documents stored on other devices and services. The deletion of this material will cause irreparable harm to Comet as it would no longer be able to assess the extent of the damage done to its business. Moreover, it is well within the capabilities of Beuerman to maintain the evidence in this case. He can do so by maintaining the status quo. *See e.g. KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 898 (N.D. Cal. 2010) ("The court issued a temporary restraining order the same day [the action was filed] prohibiting defendants from using [plaintiff's] trade secrets or destroying evidence and requiring defendants to preserve electronic evidence.").

In light of Comet's well-founded fear that Beuerman will erase, destroy or "lose" evidence of his wrongdoing, Comet requests that this Court order Beuerman to turn over to Comet's counsel all of Comet's trade secret and confidential information as well as the storage devices or media on which such information resides. Comet also requests an immediate document preservation order, notifying Beuerman of his obligations to preserve evidence.

## H.    This Court Should Permit Plaintiff Limited Expedited Discovery

Comet requests that the Court authorize limited expedited discovery prior to the briefing and hearing on the preliminary injunction. Courts may allow expedited discovery for good cause.

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."  *Id.*  Courts have found that such discovery is appropriate prior to preliminary injunctions.  *See e.g. Pyro Spectaculars North, Inc.*, 861 F. Supp. 2d at 1086 (expedited discovery, including computer forensic examinations and depositions, permitted prior to preliminary injunction); *KLA-Tencor*, 717 F. Supp. 2d at 898 ("court grated plaintiff leave to take expedited discovery, including oral depositions of the individual defendants" prior to the preliminary injunction hearing).

Here, expedited discovery is necessary so that Comet can better understand the nature and extent of Beuerman's misappropriation and use of Comet's trade secrets.  Beuerman's surreptitious activity suggests that Beuerman may have taken other trade secrets and Comet's trade secrets may be residing on storage devices and services unknown to Comet such as his personal email account, computer, phone or a cloud storage service.  This is supported by Beuerman's queries of websites for instructions on how to avoid detection when emailing documents to personal Google accounts and by Beuerman's lies to Comet about the download of Comet's trade secrets to a private external memory drive.  Comet requests that the Court permit it to conduct limited expedited discovery to determine:

- The company property Beuerman took from Comet, including the trade secret and confidential information that is the subject of this action;
- The current location of any Comet property taken by Beuerman, including the trade secret and confidential information that is the subject of this action;
- Whether, when and what trade secret and confidential information Beuerman has disclosed to his new employer, XP Power; and
- Whether and what trade secret and confidential information Beuerman is using in the course of his employment at XP Power.

Good cause exists for expedited discovery as Comet has provided compelling evidence that it has a high likelihood of success in pursuing its claims.  Beuerman falsely attested to and lied about his return and non-retention of company property, and queried means to cover his

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    tracks.  There exists a likely risk that Beuerman will further attempt to conceal his unlawful

2    actions.  Any potential prejudice from this discovery is minimal given that it is narrowly tailored

3    to determine only the basic nature and extent of Beuerman's misappropriation.

4    **IV.    CONCLUSION**

5         Comet has shown a strong likelihood of prevailing on its claims against Beuerman. Comet

6    has also shown strong evidence that Beuerman possesses Comet's trade secrets and confidential

7    information and knowingly lied about and attempted to conceal such actions in violation of his

8    contractual obligations and the law.  In light of this evidence, this Court should grant the

9    requested temporary restraining order and later a preliminary injunction until the Court can

10   determine whether Beuerman has any colorable explanation or justification for the above-

11   described actions.

12   Dated:  March 13, 2018                    Squire Patton Boggs (US) LLP

13

14                                            By: /s/Matthew F. Miller

15                                                 Matthew F. Miller
                                                   Nisha S. Patel
                                                   Attorneys for Plaintiff
16                                                 COMET TECHNOLOGIES USA INC.

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

EX PARTE APP. FOR TRO, OSC
CASE NO. 5:18-CV-01441 LHK