UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COMET TECHNOLOGIES UNITED STATES OF AMERICA INC., <br><br> Plaintiff, <br><br> v. <br><br> DOUGLAS BEUERMAN, <br><br> Defendant. | Case No. 18-CV-01441-LHK <br><br> **ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY** <br><br> Re: Dkt. No. 18 |

Plaintiff Comet Technologies USA Inc. ("Plaintiff") brings this action against its former employee Defendant Douglas Beuerman ("Defendant"), alleging that Defendant removed confidential information from Plaintiff without authorization. Before the Court is Plaintiff's motion for a temporary restraining order ("TRO") to prevent Defendant from disclosing the information that Defendant removed. Plaintiff also seeks a protective order requiring Defendant to return or preserve the information Defendant removed, and an order granting Plaintiff expedited discovery. For the following reasons, the Court GRANTS Plaintiff's motion for a TRO, GRANTS Plaintiff's motion for a protective order, and GRANTS Plaintiff's request for expedited discovery.

**I.     BACKGROUND**

1

Case No. 18-CV-01441-LHK
ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY

### A. Factual Background

Plaintiff is a technology firm headquartered in Switzerland that primarily makes products that rely on x-ray, radio frequency and ebeam technology. ECF No. 1 ¶ 12 ("Compl."). Plaintiff operates a facility in San Jose, California. *Id.* ¶ 12. Plaintiff hired Defendant to work at its San Jose facility in 2011. *Id.* ¶ 16. Defendant was a senior employee with managerial and oversight functions. *Id.*

On January 6, 2018, Defendant conducted a Google search for "can i recruit employees from my previous employer" and visited a webpage titled "Legally Poaching Employees From Another Company (and Preventing It)". *Id.* ¶ 21.

On January 11, 2018, Defendant received an offer of employment from XP Power LLC ("XP Power"). *Id.* ¶ 22. XP Power is one of Plaintiff's competitors. *Id.*

On January 14, 2018, Defendant visited a website detailing how to prevent others from "Find[ing] out what searches you did or sites you visited" and from "See[ing] that your account was signed in." *Id.* ¶ 20. Defendant subsequently logged into Plaintiff's workplace management system, called Jira/Confluence ("Confluence"). *Id.* ¶ 23. Plaintiff entered the R&D team's digital area and downloaded over a hundred documents that related to Plaintiff's advanced Generation 3.0 technology and Da Vinci Project (collectively, "Da Vinci Project"). *Id.*; ECF No. 6 at 3. Defendant did not download the documents to his workplace laptop, but rather to a private external memory device. Compl. ¶ 23. Defendant had never before accessed any sites applicable to the Da Vinci Project. *See id.*; ECF No. 6 at 3.

On January 15, 2018, Defendant accepted XP Power's job offer and submitted his letter of resignation to Plaintiff. Defendant's last day of employment was January 26, 2018. Compl. ¶¶ 27–28.

On January 26, 2018, Defendant participated in an exit interview. *id*. ¶ 28. During this interview, Defendant reaffirmed his promises to abide by the terms of confidentiality agreements with Plaintiff following the end of Defendant's employment. *Id.* ¶¶ 29–30. Defendant also signed

2

Case No. 18-CV-01441-LHK
ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY

an agreement that acknowledged Defendant did not have any of Plaintiff's proprietary information in his possession and that Defendant had not transferred any proprietary information outside of the Plaintiff's networks. When asked, Defendant did not deny that he had accessed the Confluence information described above. Compl. ¶ 31. However, Defendant stated that he had only downloaded documents to his work laptop and to no other devices. *Id.* When asked specifically to turn in any external memory devices containing Plaintiff's property, Defendant denied having any such devices. *Id.* Defendant also stated that his next employer was not one of Plaintiff's competitors. *Id.*

On February 12, 2018, a private investigator employed by Plaintiff followed Defendant's vehicle from his home and observed that Plaintiff's vehicle was located in the parking lot of XP Power's headquarters in Sunnyvale, California. ECF No. 18-2 at 2.

### B. Procedural History

On March 6, 2018, Plaintiff filed the complaint initiating this action. Compl. The complaint brings causes of action for (1) Violation of the Defend Trade Secret Act, 18 U.S.C. § 1836, et seq.; (2) Violation of the California Uniform Trade Secret Act, Cal. Civ. Code § 3246, et seq.; (3) Breach of Contract; (4) Breach of Fiduciary Duty and Duty of Loyalty; (5) Unfair Business Practices, Cal. Bus. & Prof. Code § 17200 et seq; and (6) Violation of the California Computer Data Access and Fraud Act, Cal. Pen. Code § 502. *Id.*

On March 7, 2018, Plaintiff a motion requesting a TRO. ECF No. 6. On March 8, 2018, the case was reassigned to this Court. ECF No. 8. On March 9, 2018, the Court ordered Plaintiff to file proof of service, ECF No. 12, and subsequently denied Plaintiff's motion for TRO. ECF No. 14.

On March 13, 2018, Plaintiff filed the instant motion for TRO. ECF No. 18 ("Mot."). On March 13, 2018, the Court ordered Defendant to file a response. ECF No. 19. On March 14, 2018, Defendant filed a response. ECF No. 21 ("Opp.")

## II. LEGAL STANDARD

3

Case No. 18-CV-01441-LHK
ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A plaintiff seeking a preliminary injunction must establish that he [or she] is likely to succeed on the merits, that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his [or her] favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (emphasis added).

Moreover, the party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted) (emphasis in original).

Federal Rule of Civil Procedure 65(b)(1) states that the court may issue a temporary restraining order without notice only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Also related to notice, the Court's Local Rule 65-1(b) states that, unless relieved by the Court for good cause shown, "on or before the day of an ex parte motion for a temporary restraining order, counsel applying for the temporary restraining order must deliver notice of such motion to opposing counsel or party."

### III.    DISCUSSION

Plaintiff argues (1) that the Court should grant a TRO; (2) that no injunction bond should be required; (3) that the Court should issue a preservation order; and (4) that the Court should grant Plaintiff expedited discovery. The Court finds for Plaintiff on all issues.

Case No. 18-CV-01441-LHK
ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY

**A.     Temporary Restraining Order**

**1.     Likelihood of Success on the Merits**

Plaintiff claims that Defendant misappropriated trade secrets in violation of the federal Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA").[1] Both claims require Plaintiff to show that the information at issue is a "trade secret" and that Defendant "misappropriated" the information. *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, 2005 WL 5517732, at *2 (S.D. Cal. 2005) ("In order to prevail on a misappropriation of trade secrets claim, Eldorado must demonstrate that they have protectable trade secrets and that defendants misappropriated these trade secrets"). The Court takes each requirement in turn.

The first question is whether Plaintiff is likely to show that the Da Vinci Project information Defendant took is as a "trade secret." The DTSA defines a trade secret as information which:

> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). Similarly, the CUTSA defines a trade secret as information that:

> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

Plaintiff has taken a number of steps to keep the information at issue secret, including requiring employees to sign non-disclosure agreements, conducting exit interviews that stress departing employees' confidentiality obligations, limiting access to Confluence files based on

---

[1] Because the Court grants Plaintiff's motion for TRO on the basis of Plaintiff's DTSA and CUTSA claims, the Court does not reach the other claims in Plaintiff's complaint.

5
Case No. 18-CV-01441-LHK
ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY

seniority and access need, and establishing internal policies that prohibit using third party data storage for company information and require high quality passwords. Mot. at 7–8. The Court finds that Plaintiff is likely to show that these efforts constitute "reasonable measures" to maintain secrecy under the DTSA and "efforts that are reasonable under the circumstances" to maintain secrecy under the CTSA. *See Posdata Co. v. Kim*, 2007 WL 1848661, at *5 (N.D. Cal. 2007) (finding for TRO purposes that confidentiality agreements and internal security procedures were reasonable measures); *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 1028254, at *4 (N.D. Cal. 2010) (finding for preliminary injunction purposes that confidentiality agreements and password protections constituted reasonable measures).

Plaintiff is also likely to show that the information derives its value from not being "generally known." 18 U.S.C. § 1839(3)(A); Cal. Civ. Code § 3426.1(d)(1). Plaintiff states that Defendant "accessed, downloaded and took schematics, 3D drawings and models, assembly and production instructions, simulations, measurement results, pictures, and drawings of the new RF power amplifiers, combining networks and control systems—essentially everything needed to reproduce one of Comet's newest and most valuable technologies." Mot. at 18. A collection of data that allows the holder to recreate one of Plaintiff's top technologies derives its value from not being generally known, because Plaintiff's competitive edge would evaporate if the public and its competitors could easily recreate its products. *See Posdata*, 2007 WL 1848661, at *1, 4–5 (finding for TRO purposes that Plaintiff was likely to show the design for a computer chip constituted a trade secret); *Eldorado*, 2005 WL 5517732, at *2–3 (finding for preliminary injunction purposes that information an employee copied that showed "the exact way that Eldorado makes each of its products" constituted a trade secret).

The second question is whether Defendant misappropriated the information. The DTSA and CUTSA both define "misappropriation" to include "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means". 18 U.S.C. § 1839(5)(A); Cal. Civ. Code § 3426.1(b)(1). Both statutes also define "improper

means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means… ." 18 U.S.C. § 1839(6)(A); Cal. Civ. Code § 3426.1(a).

Here, Defendant knew or had reason to know that downloading and removing the Da Vinci Project information was theft or, at minimum, a breach of Defendant's contractual duty to maintain secrecy. Moreover, if Defendant was at all unclear about whether taking information was a breach of Defendant's duty to maintain secrecy, the exit interview would have dispelled any doubts. During the interview, Defendant was confronted about downloading the Da Vinci Project information, was asked to turn in any external memory devices containing Plaintiff's property, and even signed a Separation of Employment Agreement stating:

> Employee acknowledges that Employee has delivered to the Company, or destroyed in a manner sufficient to ensure confidentiality, all documents, including records, data, notes, reports, e-mail messages, proposals, lists, and correspondence, whether in hard copy form or electronically stored that were provided to Employee by the Company, developed or obtained by Employee as a result of Employee's working relationship with the company, or otherwise belonging to the Company, its parents, affiliates, successors or predecessors

Mot. at 12; *see id.* (separate portion of Separation of Employment Agreement stating "Employee reaffirms and agrees to observe and abide by the terms of the confidentiality agreements Employee signed during Employment."). Defendant denied having external memory devices containing Plaintiff's property during the exit interview and denied that Defendant was leaving to work for one of Plaintiff's competitors. Mot. at 13. Despite this, Defendant's opposition now concedes that Defendant removed Plaintiff's confidential information and possessed such information at the time of, and after, Defendant's exit interview with Plaintiff. ECF No. 21-1 at 2. Moreover, Defendant's opposition does not dispute that Defendant now works for one of Plaintiff's competitors. *Id.* Given Defendant's false representations to Plaintiff and given Plaintiff's repeated efforts to ensure its confidential information was protected, the Court finds that Defendant knew or had reason to know that removing the information at issue breached Defendant's duty to maintain secrecy.

Underscoring the point, *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal.

7

2016), granted the plaintiff's motion for TRO based on strikingly similar facts. There, the court concluded that Plaintiff was likely to succeed on its DTSA and CUTSA claims because the defendant had "e-mailed and downloaded, to her personal devices, confidential information from HSI before leaving her employment to work at a competitor" and the defendant had signed an agreement with provisions for confidentiality. *Id.*

In sum, the Court finds that Plaintiff has shown a likelihood of success on the merits of Plaintiff's DTSA and CUTSA claims.

### 2. Irreparable Harm

Plaintiff next argues that it will suffer irreparable harm if the Court does not grant the requested TRO. The Court agrees.

At the outset, courts in this district have "presume[d] that Plaintiff will suffer irreparable harm if its proprietary information is misappropriated." *W. Directories, Inc. v. Golden Guide Directories, Inc.*, 2009 WL 1625945, at *6 (N.D. Cal. 2009); *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 1028254, at *8 (N.D. Cal. 2010) ("California courts have presumed irreparable harm when proprietary information is misappropriated."). Consequently, the Court's conclusion that Plaintiff is likely to prevail on its trade secret misappropriation claims supports a finding of irreparable harm. *See Lillge v. Verity*, 2007 WL 2900568, at *7 (N.D. Cal. 2007) ("[T]he risk of losing established customers to defendants' new business due to defendants' improper use of plaintiff's proprietary information would obviously create lasting, irreparable harm.").

Other factors also indicate Plaintiff is likely to suffer irreparable harm. "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Henry Schein*, 191 F. Supp. 3d at 1077 (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)). Here, Defendant took proprietary information relating to a new product from Plaintiff and immediately began working for one of Plaintiff's competitors, which indicates Plaintiff risks losing customers as a result of Defendant's conduct. *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, 2005 WL 5517732, at *4 (S.D. Cal.

2005) ("On the issue of irreparable harm, Eldorado will suffer injury in the form of lower sales and potential diminution of market share."). Plaintiff's expenditure of considerable time and resources on the Da Vinci Project further supports a finding of irreparable harm because disclosure of the Da Vinci Project information will jeopardize Plaintiff's competitive position. *See Posdata*, 2007 WL 1848661, at *8 ("The Posdata technology at issue has been developed with substantial company resources and at considerable cost, thus development by InQuadron of this technology or its dissemination may result in irreparable harm to plaintiff."). Plaintiff's concerns are justifiably heightened because of Defendant's conduct before his exit interview and Defendant's false representations to Plaintiff during Defendant's exit interview. Opp. at 2; ECF No. 21-1 at 2.

### 3. Balance of Hardships

Plaintiff next claims that the balance of hardships favors Plaintiff. The Court agrees.

The proprietary information at issue belongs to Plaintiff, not Defendant. Thus, Plaintiff has a very strong interest in ensuring that the information is not disclosed. On the other side, Defendant has little interest in disclosing or using the information because such disclosure or use is unauthorized. Consequently, the Court finds that granting Plaintiff's TRO will result in little meaningful hardship to Defendant because the TRO "would essentially only require him to abide by existing law regarding the unauthorized use of another's trade secrets." *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1092 (E.D. Cal. 2012).

### 4. Public Interest

Plaintiff claims that issuing a TRO is in the public's interest. The Court agrees.

As Plaintiff points out, the public has a strong interest in ensuring trade secrets are protected. Courts have recognized this strong public interest in the injunctive relief context. *Id.* at 1093 ("[A]n injunction specifically focused on preventing misuse of PSI's trade secrets to solicit PSI's customers would serve the policy of protecting trade secrets while simultaneously allowing lawful competition."); *Henry Schein*, 191 F. Supp. 3d at 1078 ("[T]he public interest is served when defendant is asked to do no more than abide by trade laws and the obligations of contractual

9
Case No. 18-CV-01441-LHK
ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY

1  agreements signed with her employer. Public interest is also served by enabling the protection of
2  trade secrets."). Accordingly, the Court finds that granting Plaintiff's motion for a TRO is in the
3  public interest.

4  In sum, the Court finds that Plaintiff is likely to succeed on the merits, that Plaintiff is
5  likely to suffer irreparable harm absent a TRO, that the balance of hardships favors Plaintiff, and
6  that an injunction is in the public interest. The Court will therefore grant Plaintiff's request for a
7  TRO.

### B.  Injunction Bond

Although the Court will grant Plaintiff's motion for a TRO, the question remains whether or not the Court should require an injunction bond. Plaintiff argues that no injunction bond should be required. The Court agrees.

Federal Rule of Civil Procedure 65(c) "invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassidy*, 320 F. 3d 906, 919 (9th Cir. 2003) (internal citations omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.*

The Court finds that there is no realistic likelihood of harm to Defendant because Defendant was never entitled to disclose or use the information he took from Plaintiff. Put otherwise, there is no likelihood of harm because the TRO would simply enjoin Defendant from doing something Defendant never had a right to do in the first place. Moreover, the Confidentiality Agreement that Defendant previously signed with Plaintiff expressly allows Plaintiff to seek injunctive relief without bond. Mot. at 22. Thus, the Court therefore finds that no bond is necessary for a TRO barring Defendant from using Plaintiff's confidential information because it "will not cause any damage to [Defendant's] legitimate business, and further because [Defendant] agreed, in her employment agreements with [Plaintiff], that [Plaintiff] may seek injunctive relief without a bond." *Henry Schein*, 191 F. Supp. 3d at 1078.

**C.     Preservation Order**

Plaintiff next requests an order requiring Defendant to return the Da Vinci Project information, or if the information cannot be returned, that Defendant preserve it. The Court will grant this order.

"Once a complaint is filed, parties to a lawsuit are under a duty to preserve evidence that is relevant or could reasonably lead to the discovery of admissible evidence." *Bright Sols. for Dyslexia, Inc. v. Doe 1*, 2015 WL 5159125, at *2 (N.D. Cal. 2015) (internal quotation marks and citation omitted). As a result, a party seeking to impose stricter preservation requirements "must make some showing of a significant concern that potentially relevant evidence will be destroyed … ." *OOO Brunswick Rail Mgmt. v. Sultanov*, 2017 WL 67119, at *1 (N.D. Cal. 2017) (internal quotation marks and citation omitted). "To determine whether a preservation order is necessary, courts consider (1) threats to preservation of the evidence, (2) irreparable harm likely to result to the party seeking preservation, and (3) the capability of the custodian to maintain the evidence sought to be preserved." *Id.*

The Court finds that Plaintiff has satisfied these requirements. Defendant removed information from Plaintiff without authorization and immediately before Defendant resigned in order to work for one of Plaintiff's competitors. While removing the information, Defendant researched ways to prevent others from finding out what sites Defendant visited or that Defendant had logged into his account. Mot at 10. Defendant downloaded the information to an external memory device and then denied having done so during his exit interview. *Id.* at 12–13. Defendant also denied in the exit interview that he was going to work for one of Plaintiff's competitors. *Id.* at 13. Given this backdrop, the Court finds that there is a significant risk that Defendant will destroy the information at issue.

The Court also finds that irreparable harm is likely to result to Plaintiff if the evidence is destroyed because Plaintiff will be unable to determine the extent of the damage to its business. Defendant's opposition informs the Court that Defendant has already deleted much of the

11
Case No. 18-CV-01441-LHK
ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY

information at issue. Opp. at 1. Even so, any information that remains undeleted is still highly relevant to determining the damage to Plaintiff's business, which supports a finding of irreparable harm. Finally, the Court finds that it is within Defendant's capacity to maintain the evidence that remains because all Defendant needs to do is return a physical device to Plaintiff, or refrain from deleting digital information. *See, e.g., KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 898 (N.D. Cal. 2010) ("The court issued a temporary restraining order the same day [the action was filed] prohibiting defendants from using [plaintiff's] trade secrets or destroying evidence and requiring defendants to preserve electronic evidence.").

### D.    Expedited Discovery

Plaintiff also requests expedited discovery. The Court will grant expedited discovery.

The standard for expedited discovery is "good cause." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

The Court finds there is good cause for expedited discovery. Plaintiff argues that expedited discovery is necessary "so that Comet can better understand the nature and extent of Beuerman's misappropriation and use of Comet's trade secrets." Mot. at 24. More specifically, Plaintiff seeks expedited discovery to determine:

- The company property Beuerman took from Comet, including the trade secret and confidential information that is the subject of this action;
- The current location of any Comet property taken by Beuerman, including the trade secret and confidential information that is the subject of this action;
- Whether, when and what trade secret and confidential information Beuerman has disclosed to his new employer, XP Power; and
- Whether and what trade secret and confidential information Beuerman is using in the course of his employment at XP Power.

*Id*. Quickly determining what information Defendant removed from Plaintiff, and whether and how Plaintiff's information is being used by Plaintiff's competitors is essential in order to minimize any harm to Plaintiff's competitive position. Moreover, the Court finds that the

12
Case No. 18-CV-01441-LHK
ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY

discovery that Plaintiff seeks—primarily a deposition of Defendant—is limited enough in scope that any prejudice to Defendant is outweighed by the need for expedited discovery. *See KLA-Tencor*, 717 F. Supp. 2d at 898 (noting court granted plaintiff leave to take expedited discovery along with TRO, including oral depositions of defendants); *Pyro Spectaculars*, 861 F. Supp. 2d at 1086 (allowing expedited discovery that included forensic computer examinations and depositions prior to preliminary injunction).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for a TRO and will not require an injunction bond. The Court GRANTS Plaintiff's request for a preservation order. The Court also GRANTS Plaintiff's request for expedited discovery. Plaintiff shall complete the deposition of Defendant no later than April 9, 2018.

The Court DENIES without prejudice Plaintiff's request for a preliminary injunction. Plaintiff shall file a renewed motion for preliminary injunction by April 13, 2018. Defendant shall file an opposition by April 24, 2018. Plaintiff may file a reply on April 27, 2018. The Court sets a hearing on Plaintiff's request for a preliminary injunction for May 10, 2018, at 1:30 p.m.

The Court refers the parties to the accompanying order, ECF No. 22, for further details. The parties shall file a Stipulation and [Proposed] Order Selecting an ADR Process by March 16, 2018. This form is available at cand.uscourts.gov/adr.

**IT IS SO ORDERED.**

Dated: March 15, 2018

_____
LUCY H. KOH
United States District Judge

13
Case No. 18-CV-01441-LHK
ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, PROTECTIVE ORDER AND EXPEDITED DISCOVERY